**8**

**FEDERAL TRADE COMMISSION,**
Petitioner,

v.

**GLAXOSMITHKLINE, Respondent,**

**No. 1:01MS00163 (RCL).**

United States District Court,
District of Columbia.

June 12, 2001.

Melvin H. Orlans, Federal Trade Commission, Washington, DC, for Petitioner.

Frank J. Eisenhart, Dechert Price & Rhoads, Washington, DC, Stephan A. Stack, Jr., George G. Gordon, Dechert Price & Rhoads, Philadelphia, PA, for Respondent.

### *MEMORANDUM OPINION*

LAMBERTH, District Judge.

This matter comes before the court upon a petition by the Federal Trade Commission (the "Commission") and a motion for an order requiring GlaxoSmithKline ("GSK") to respond to Specification 12 of a subpoena *duces tecum* issued in connection with a law enforcement investigation being conducted by the Commission. For the following reasons, the Commission's motion shall be granted and the subpoena shall be enforced.

### I. FACTS

GlaxoSmithKline ("GSK") is a corporation organized and existing under the laws of the United Kingdom and created by the recent merger of SmithKline Beecham ("SKB") and Glaxo Welcome. GSK produces the antide-

pressant drug, paroxetine hydrochloride hemihydrate, under the brand name Paxil. GSK has a New Drug Application for Paxil on file with the Food and Drug Administration ("FDA") and is currently the only firm that the FDA allows to sell the drug in the United States.

The Federal Trade Commission (the "Commission") is an administrative agency of the United States government, organized and existing pursuant to the provisions of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 *et seq.* Under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the Commission is authorized to prohibit unfair methods of competition in or affecting commerce. In accordance with this power and authorized by a resolution of December 11, 2000, the Commission is investigating whether GSK monopolized or is attempting to monopolize the market for paroxetine hydrochloride hemihydrate by preventing generic competition for its drug Paxil through the illegal listing of patents related to the drug in the FDA's compilation of "Approved Drug Products with Therapeutic Evaluations."

On December 14, 2000, the Commission issued a subpoena *duces tecum* (the "subpoena") to GSK in accordance with Section 9 of the FTC Act, 15 U.S.C. § 49. Specification 12 of the subpoena requires the disclosure of "all documents relating to Paxil, regardless of date of creation or receipt, that any court has ordered SKB to produce in any litigation despite a claim of privilege by SKB." (Pet. Exh. B). The purpose of Specification 12 is to acquire documents (the "Chicago Documents") that were previously deemed non-privileged by the District Court for the Northern District of Illinois in a private patent litigation (the "Chicago Patent Litigation") between respondent and Apotex Corporation. *See Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530 (N.D.Ill.2000) (magistrate), *aff'd*, 2000 WL 1310668, 2000 U.S. Dist. LEXIS 13606 (N.D.Ill. September 13, 2000), *petition for mandamus denied sub nom In re SmithKline Beecham Corp.*, 243 F.3d 565 (Fed.Cir. November 1, 2000) (Table). In response to the Specification 12, at some time after February 9, 2001, GSK produced 4 documents that it found not to be privileged, 3 documents in redacted form, and withheld 53 documents that it deemed privileged. On February 21, 2001, GSK provided the Commission with a privilege log with respect to the 56 documents that were either withheld or redacted.

On April 4, 2001, the Commission moved to enforce disclosure of the requested documents. This court today grants the Commission's petition and requires respondent to fully and promptly comply with the subpoena *duces tecum.*

## II. DISCUSSION

### A. Issues Presented

The Commission argues that this court should enforce the subpoena for four reasons. First, the petitioner holds that GSK has waived any privilege objections to the Chicago Documents by failing to file a petition to quash Specification 12 pursuant to the Commission's Rules of Practice. Second, the Commission claims that the decision in the "Chicago Patent Litigation" collaterally estops GSK from now asserting privilege. Third, petitioner contends that GSK's privilege objections are without merit, because certain of the documents are not properly covered by the attorney-client or work-product privileges. Fourth, the petitioner asserts that it can overcome GSK's assertions of work-product privilege by establishing the requisite "substantial need" for acquiring the said documents.

### 1. Waiver

The Commission asserts that GSK's failure to file a petition to quash Specification 12 of the subpoena *duces tecum* resulted in a waiver of its privilege objections. Petitioner relies on Rule 2.7(d) of the Federal Trade Commission's Rules of Practice which states that "any petition to limit or quash any investigational subpoena or civil investigative demand shall be filed with the Secretary of the Commission within twenty (20) days after service of the subpoena...such petition shall set forth all assertions of privilege or other factual and legal objections to the subpoena." 16 C.F.R. § 2.7(d) (2000). Despite the plain text of the rule, GSK contends that a Petition

to Quash is only a discretionary procedure, relying on the declaration of an attorney employed by the FTC, Randall David Marks for making this determination. However, in the same paragraph of the declaration, the attorney quotes Rule 2.7(d) of the Federal Trade Commission's Rules of Practice in its entirety. 16 C.F.R. § 2.7(d) (2000). The use of the word "shall" in the regulation can lead to no other determination except that filing such a petition to quash is a mandatory procedure.

Respondent also argues that Rule 2.8A of the Federal Trade Commission's Rules of Practice, rather than Rule 2.7(d), controls under these circumstances. Even if this proposal were true, the rule would do little to support GSK's argument. Rule 2.8A holds that "any person withholding material responsive to an investigational subpoena...shall asset a claim of privilege...not later than the date set for the production of material. Such person shall, if so directed in the subpoena...submit, together with such claim, a schedule of the items withheld." 16 C.F.R. § 2.8A (2000). The Commission's subpoena set January 5, 2001, as the date for production of the requested documents. GSK failed to assert its claim of privilege or deliver a schedule of the items withheld until well after the subpoena's deadline. While Rule 2.8A does allow for a privilege log to be submitted, it does not allow for inaction as an alternative to the filing of a petition to quash.

Moreover, GSK incorrectly claims that the subpoena's wording protects it from having waived its privilege objections. The respondent is correct in asserting that the subpoena provides for the withholding of privileged material and the submitting of a privilege log as an alternative to disclosure; however, Instruction 12 of the subpoena clearly explains that "[c]ompliance with this subpoena requires the SKB to submit to the Commission all responsive documents and the following...(b) [a] Privilege Log according to Instruction 9 if any responsive documents are withheld or redacted." (Subpoena at 4 (Instruction # 12)). The response date set by the subpoena is January 5.2001. (Id. at 4 (Instruction # 11)). As discussed previously,

GSK did not take any actions prior to this date.

GSK also claims that the Commission's course of conduct in enforcing the subpoena prevents the petitioner from now raising a waiver argument. GSK claims that "good faith negotiations" began between the two sides with a correspondence by the Commission on December 19, 2000. The letter sent on that date explained that the Commission was waiting to find out "the scope of the documents that might be responsive to the subpoena." (Marks Decl. ¶ 7). Two additional letters were sent by the Commission on January 19, 2001 and January 26, 2001. The prior inquired about any previous judicial decisions on privilege covering documents sought by the Commission and the later requested that GSK notify the Commission by January 31, 2001, whether and when the documents would be produced. GSK did not respond to the Commission's inquiries until February 9, 2001 and did not provide a privilege log until February 21, 2001. This can hardly be deemed "negotiations." Moreover, at no time has the Commission waived its right to enforce the administrative subpoena nor has GSK been granted an extension of time to respond.

Furthermore, GSK relies on *Equal Employment Opportunity Commission v. Lutheran Social Services*, 186 F.3d 959 (D.C.Cir.1999), to support its argument that it did not waive its privilege objections. However, the facts of this case are clearly distinguishable from the "particular circumstances" in *Lutheran Social Services* that the Court of Appeals for this Circuit relied on to deny the waiver argument. *Id.* at 960. First, in *Lutheran Social Services*, the Court of Appeals held that "[n]othing on the face of the subpoena or in the statutes to which it referred would have led [Lutheran's Human Resource Director] to believe that Lutheran must petition the EEOC within five days, particularly given that Lutheran's objection rested not on relevance or particularity, but on the attorney-client and work product privileges." *Id.* at 964. As discussed above, both the subpoena and the regulation involved in the case at hand clearly notified GSK that it was required to either file a

petition to quash or to supply a privilege log within a certain period of time, i.e., January 5, 2001. Second, in *Lutheran Social Services*, "the EEOC official with whom the regulation required Lutheran to file its petition...was aware of the nature of Lutheran's objections." *Id.* at 965. In fact, the subpoena described the document requested as the report "referenced in previous correspondence." *Id.* at 965. In the case at hand, the Commission had no prior assurance that GSK would raise privilege objections to the documents requested in Specification 12 of the subpoena.

Moreover, the Court of Appeals in *Lutheran Social Services* emphasized the fact that the EEOC investigator failed to immediately notify Lutheran that it missed the deadline to file a petition to quash not as a separate reason for denying the EEOC's waiver argument, but instead as evidence of the ambiguity of the time limit set for raising an objection to the subpoena. *Id.* at 965. Therefore, the Commission's waiver argument is not diminished by its failure to promptly enforce the subpoena against GSK.

In light of these circumstances, the Commission is correct in holding that GSK has waived its privilege objections. GSK does not even allege, much less establish, that the Commission ever extended the deadline for compliance with the subpoena.

### 2. Collateral Estoppel

The second argument advanced by the petitioner is that under the doctrine of offensive collateral estoppel GSK should be precluded from relitigating the privilege issues already determined in *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530 (N.D.Ill.2000) (magistrate), *aff'd*, 2000 WL 1310668, 2000 U.S. Dist. LEXIS 13606 (N.D.Ill. September 13, 2000), *petition for mandamus denied sub nom In re SmithKline Beecham Corp.*, 243 F.3d 565 (Fed.Cir. November 1, 2000) (Table).

 Offensive collateral estoppel precludes a defendant from relitigating identical issues that the defendant litigated and lost in a prior litigation. *See Milton S. Kronheim & Co., Inc. v. District of Columbia*, 91 F.3d 193

(D.C.Cir.1996), *cert. denied*, 520 U.S. 1186, 117 S.Ct. 1468, 137 L.Ed.2d 681 (1997); *Jack Faucett Associates, Inc. v. AT & T Co.*, 744 F.2d 118 (D.C.Cir.1984), *cert. denied*, 469 U.S. 1196, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985). However, "[t]hree conditions must be satisfied before a party can be estopped from relitigating an identical issue previously decided: (1) the issue must have been actually litigated, that is contested by the parties and submitted for determination by the court; (2) the issue must have been "actually and necessarily determined by a court of competent jurisdiction" in the first trial; (3) preclusion in the second trial must not work an unfairness." *Milton S. Kronheim & Co., Inc. v. District of Columbia*, 91 F.3d at 197; *Jack Faucett Associates, Inc. v. AT & T Co.*, 744 F.2d at 125.

 Respondent asserts that the privilege issues in the present case have not been "actually litigated" or "actually and necessarily determined" because the privilege log presented to the Commission "provides much more fulsome explanations" than the privilege log in the Chicago Patent Litigation. However, "preclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first." *Yamaha Corporation of America v. United States*, 961 F.2d 245, 254–255 (D.C.Cir.1992). And "[o]nce an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." *Id.* at 254. The 56 documents sought by Specification 12 of the Commission's subpoena are a subset of approximately 500 documents that GSK was ordered to produce in the Chicago Patent Litigation. GSK had the opportunity in the prior action to produce "more fulsome" explanations for why certain documents should be privileged, but failed to do so.

 Respondent also argues that it did not have a full and fair opportunity to litigate the privilege issues in the initial proceeding, because the interlocutory nature of the production order in the Chicago Patent Litigation prevented direct appellate review of the determination. However, after the district court ordered that the documents be produced, GSK filed a petition for a writ of mandamus with the Federal Circuit Court of

Appeals. While "the general rule is that the denial of a petition for mandamus is not ordinarily entitled to any preclusive effect...a different rule might obtain in a case where the denial of mandamus specifically addressed, and rested on, the merits of the decision below." *Stauble v. Warrob, Inc.,* 977 F.2d 690, 693 (1st Cir.1992); *See also Hiley v. United States,* 807 F.2d 623, 625 (7th Cir.1986). In the case at hand, the Federal Circuit's denial of GSK's petition for a writ of mandamus was based on the magistrate judge and district court's decisions that the respondent did not effectively establish its attorney client privilege and work product claims. The Federal Circuit focused on the findings below that SKB (GSK) failed to "show that the recipients of the privileged communications were required to see them" and to "set forth objective facts supporting its work product claims." *In re SmithKline Beecham Corp.,* 243 F.3d 565 (Fed.Cir. November 1, 2000) (Table). As a result, the Federal Court's decision was effectively an appeal on the merits of the denial of GSK's privilege objections.

Moreover, "[f]inality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts. Finality 'may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'" *In re Brown,* 951 F.2d 564, 569 (3d Cir.1991) (quoting *Dyndul v. Dyndul,* 620 F.2d 409, 412 (3d Cir.1980)); *see also Metromedia Co. v. Fugazy,* 983 F.2d 350, 366 (2d Cir.1992), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993); *Moore's Federal Practice 3d,* § 132.03[5][b][1], and cases cited therein. A magistrate judge, the District Court for the Northern District of Illinois, and the Federal Circuit have all examined the privilege objections that were fully and vigorously litigated by SKB (GSK) and have determined that they are insufficient. Therefore, these issues are "final" for the purpose of issue preclusion.

GSK's privilege objections have been actually litigated and necessarily determined, and it would not be unfair to preclude the respondent from raising them again. In light of these circumstances, the Commission's argument for collateral estoppel should be upheld.

### 3. Merits and Substantial Need

Due to the strength of the petitioner's waiver and collateral estoppel arguments, the merits of GSK's privilege objections and the Commission's showing of a "substantial need" to procure the withheld documents need not be addressed at this time.

### 4. In Camera Review Denied

The Court will deny as moot the motion by GlaxoSmithKline ("GSK") for *in camera* review of the 56 documents that are now sought by Specification 12 of the subpoena *duces tecum* issued by the Federal Trade Commission.

### III. CONCLUSION

This court finds: 1) that GSK has waived its right to assert privilege objections to the documents requested in Specification 12 of the petitioner's subpoena duces tecum, and 2) that GSK is precluded from relitigating the privilege issues already determined in the Chicago Patent Litigation. Accordingly, the court shall order respondent to fully comply with Specification 12 of the subpoena *duces tecum.*

A separate order shall issue this date.