**FEDERAL TRADE COMMISSION,**
**Appellee,**

v.

**GLAXOSMITHKLINE, Appellant.**

**No. 01–5391.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 22, 2002.
Decided July 2, 2002.

Melvin A. Schwarz argued the cause for appellant. With him on the briefs were Stephen A. Saltzburg and Stephen A. Stack Jr.

Melvin H. Orlans, Special Litigation Counsel, Federal Trade Commission, argued the cause for appellee. With him on the brief was John F. Daly, Deputy General Counsel for Litigation.

Before: GINSBURG, Chief Judge, and HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Chief Judge GINSBURG.

GINSBURG, Chief Judge:

In the course of investigating whether a manufacturer of drugs listed its patents properly in the compilation maintained by the Food and Drug Administration, the Federal Trade Commission issued a subpoena directing the company to produce documents relating to a particular drug. When the company resisted, claiming the attorney-client privilege shields the documents, the Commission repaired to the district court, which enforced the subpoena. We reverse the decision of the district court because the court both relied upon an argument to which the company had no opportunity to respond and ruled erroneously that, by failing to keep confidential the contents of the documents, the company had waived the attorney-client privilege.

## I. Background

GlaxoSmithKline manufactures paroxteine hydrochloride hemihydrate under the brand name Paxil, the annual sales of which in the United States exceed $1 billion. *See FTC v. GlaxoSmithKline*, 203 F.R.D. 14, 15 (D.D.C.2001). Several companies have applied to the Food and Drug Administration for permission to sell generic versions of Paxil when GSK's patents expire. The Federal Trade Commission is investigating whether GSK, in an attempt to prevent or delay competition from generic versions of Paxil, has abused the process for listing its patents in the FDA's compilation of "Approved Drug Products with Therapeutic Evaluations." *Id.* at 16.

The Commission issued a subpoena directing GSK to produce two types of documents. First, the Commission sought all documents concerning Paxil that the United States District Court for the Northern District of Illinois had directed GSK to disclose when GSK had sued two manufacturers of generic pharmaceuticals for infringement of its patents — the so-called Chicago documents, *see Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, *aff'd,* No. 98C3952, 2000 WL 1310669 (Sept. 13, 2000). Second, the Commission wanted all "documents related to the manufacturing and marketing of Paxil, the listing and use of any patents regarding Paxil, and any filings with the FDA regarding Paxil." *GlaxoSmithKline*, 203 F.R.D. at 16. GSK and the Commission resolved their differences over the inclusion or exclusion of thousands of documents, but because GSK declined to produce hundreds of others — primarily on the ground that they were shielded by the attorney-client privilege — the Commission petitioned the district court to enforce the subpoena.

The parties then agreed upon a procedure for presenting their positions to the district court. *See* Stipulation Establishing Schedule & Procedure for Resolving FTC's Enforcement Pet. (April 20, 2001). First, each would submit its contentions about the Chicago documents. *See id.* ¶ 1. If the court compelled GSK to produce those documents, then the parties would contest the second category of documents as follows. The Commission would "identify for GSK ... every responsive (and allegedly privileged) document that the Commission [sought] to have produced and the reason(s) why each privilege claim [was] invalid." *Id.* ¶ 3(a). GSK would then either produce the document or list it in a "privilege log identifying any documents as to which it continue[d] to assert privilege." *Id.* ¶ 3(b). Accordingly, only after the Commission had informed GSK

of its objections to the Company's claims of privilege would the parties seek judicial resolution. *See id.* ¶ 3(c). At that final stage the court would either call for oral argument or resolve summarily "[a]ny issues submitted to [it] in connection with the FTC's enforcement petition." *Id.* ¶ 5.

The district court did enforce the subpoena with respect to the Chicago documents. *FTC v. GlaxoSmithKline*, 202 F.R.D. 8, 12 (D.D.C.2001). The parties then resolved through negotiation their disputes about the disclosure of hundreds more documents, leaving unresolved the status of only 91. GSK asserted that all 91 documents were protected by the attorney-client privilege and that 34 of them were protected also by the privilege for attorney work product. The Commission told GSK it considered the assertions of privilege invalid for two reasons: (1) GSK had forfeited its claim to confidentiality by disseminating all 91 documents widely both within GSK and to consultants and other third-parties; and (2) the decision in *Apotex* estopped GSK from asserting that the 34 documents were attorney work product, that is, were prepared in anticipation of litigation. In response to these objections, GSK compiled a privilege log describing each of the 91 documents, and the parties presented their arguments to the district court.

In its opening brief to the district court, the Commission raised the two objections it had previously presented to GSK. The Commission also introduced in that brief a new argument: Regardless whether *Apotex* foreclosed the Company's claim of attorney work product, GSK's privilege log "fail[ed] to provide facts demonstrating that the document[s] w[ere] created in anticipation of litigation." When GSK objected that the Commission had not made this argument during pre-motion negotiations, the Commission withdrew the argu-

ment. It explained in a Stipulation approved by the district court that it had "inadvertently failed to provide GSK with the agreed advance notice regarding the grounds for challenging the documents." Stipulation & Order with Respect to Certain Docs. in FTC's Req. for Enforcement (Sept. 6, 2001) at ¶ 1.

GSK submitted its responsive brief to the district court and attached thereto the Company's privilege log and the affidavit of Charles Kinzig, GSK's Vice President and Director of Corporate Intellectual Property. For each document, the log described the contents; listed the author, intended recipients, and date of creation; and noted whether the author or intended recipients were attorneys. A supplement to the log indicated the title or titles of each person therein named who was not an attorney. The Kinzig Declaration stated that the documents had been disseminated to various "teams" of company employees and contractors, and explained the duties of each team. According to Kinzig, all the teams were "involved in seeking or giving legal advice and/or gathering and recording information in anticipation of or preparation for litigation." The Kinzig Declaration states also that every employee and contractor named in the privilege log was "bound not to disclose confidential information to persons outside [GSK]" without receiving permission from a high-ranking official of the Company.

The Commission then filed a reply brief in which it made yet another argument for the first time: The attorney-client privilege does not shield the documents because they contain no confidential information.

The district court ordered GSK to produce the 91 documents. The court rejected GSK's claims of attorney-client privilege on the grounds that (1) "GSK ha[d] not sustained its burden of demonstrating that the relevant documents were distributed on a 'need to know' basis or to employees that were 'authorized to speak or act' for GSK," 203 F.R.D. at 19, and (2) the Company had "failed to provide sufficient evidence that the information contained therein is confidential," *id.* at 20. The court rejected GSK's claims of attorney work product for the reason withdrawn by the Commission, namely, that "GSK fail[ed] to set forth objective facts that support the corporation's assertion that the relevant documents were created in anticipation of litigation." *Id.* at 21. Having determined that "even if GSK is not precluded from asserting the privilege [for attorney work product], it has failed to satisfy its burden of showing the applicability of the doctrine to the relevant documents," the district court found it unnecessary to resolve whether the decision in *Apotex* estopped GSK from claiming otherwise. *Id.* at 22 n.3. GSK sought and we granted a stay pending appeal.

## II. Analysis

GSK contends the district court erred both by rejecting its claims of privilege based upon arguments the Commission did not raise properly and by misapplying the standard for determining whether a corporation has kept confidential the contents of a communication. The Commission defends the decision of the district court and argues that GSK is collaterally estopped in any event, by reason of the *Apotex* litigation, from claiming the 34 documents are attorney work product.

Preliminarily, the parties disagree about the proper standard of review. The Commission claims we should defer to the district court unless it committed a clear error, whereas GSK argues that because the circumstances of this case "are procedurally identical to an appeal of a ruling on a motion for summary judg-

ment," we should review the decision of the district court de novo. This debate need not detain us long; our standard of review is well established. We review a decision to enforce a subpoena "only for arbitrariness or abuse of discretion." *In re Sealed Case,* 146 F.3d 881, 883 (D.C.Cir. 1998). We will affirm the decision unless it "rests upon a misapprehension of the relevant legal standard or is unsupported by the record." *In re Subpoena Served upon the Comptroller of the Currency,* 967 F.2d 630, 633 (D.C.Cir.1992).

■ The district court held that GSK failed to establish either of two prerequisites for recognition of the attorney-client privilege — that the documents contain confidential information and that they have been kept confidential. *See GlaxoSmithKline,* 203 F.R.D. at 17–18. As the Company points out, during the parties' negotiations the Commission did not dispute that the documents contain confidential information. The Commission did not even raise the argument in its opening brief before the district court, waiting instead until its reply brief and thereby depriving GSK of any opportunity to respond.

· The Commission had agreed, pursuant to the Scheduling Stipulation approved by the district court, to inform GSK of its reasons for disputing the Company's claims of privilege before asking the court for a ruling. The Commission therefore was bound not to put before the district court any objection not first raised with its adversary. Accordingly, the district court abused its discretion when it ruled against GSK based upon an argument that was raised not only in violation of the Scheduling Stipulation but so belatedly that the Company had no chance to respond to it.

The Commission acknowledges that the parties intended the Scheduling Stipulation to "enable them to narrow, through pre-motion negotiations, the claims and docu-

ments that would require judicial resolution," but it contends that "nothing in the Stipulation barred the Commission from making — or the district court from considering — additional arguments simply because they had not been presented to GSK during pre-motion negotiations." On its face, the Scheduling Stipulation — which required the Commission to raise in negotiations with GSK "the reason(s) why each privilege claim is invalid" — refutes this claim, as does the implausibility of the idea that parties would establish elaborate procedures to narrow their dispute through negotiation with the foreknowledge that their adversary might again expand the dispute before the district court. It is not surprising, therefore, that the Commission itself had previously viewed the Stipulation as binding: Recall it withdrew from the court another objection not raised in pre-motion negotiations because, in its own words, it had "inadvertently failed to provide GSK with the agreed advance notice regarding the grounds for challenging the documents." Stipulation & Order (Sept. 6, 2001) at ¶ 1.

■ Nor is it true, as the Commission claims, that "GSK suffered no possible prejudice" in having to overcome the Commission's objections in front of the district court because GSK bore the burden in any event "to present to the court sufficient facts to establish the privilege." *In re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir. 1984). If the district court had held the Commission to the terms of its agreement, then the court would not have required GSK to prove that the documents were confidential and had been kept in confidence because the issue would have been conceded. As we have held in the analogous context of a pretrial scheduling order entered pursuant to Rule 16 of the Federal Rules of Civil Procedure, "[e]ven a prima facie element of the plaintiff's case may be

removed from dispute" pursuant to a stipulation. *Smith v. Washington Sheraton Corp.*, 135 F.3d 779, 784 (D.C.Cir.1998). The concerns underlying Rule 16 compel the same result for the analogous Scheduling Stipulation agreed to by the Commission and GSK in this case. *Cf. Meadow Gold Prods. Co. v. Wright*, 278 F.2d 867, 869 (D.C.Cir.1960) (pretrial procedures aimed at "eliminating unnecessary proof and issues, lessening the opportunities for surprise and thereby expediting the trial"); D.D.C. LOCAL CIV. RULE 7.1(m) (requiring parties to consult in advance of filing nondispositive motion "in a good-faith effort . . . to narrow the areas of disagreement").

■ The question that remains is whether the district court erred in ruling that GSK failed to satisfy the second prerequisite for attorney-client privilege—that the documents have been kept confidential. GSK contends that this issue, too, was raised in a manner that deprived the Company of an opportunity to respond. We think not. The Commission took the position in its negotiations with GSK that the Company had lost its claim of privilege by disseminating the documents widely. This argument put the Company on notice that it needed to establish it had kept the documents confidential. The Commission renewed the point in its opening brief to the district court thus: "In view of the breadth of distribution and GSK's failure to carry its burden of establishing that each and every recipient had a demonstrable 'need to know,' . . . GSK's assertions of attorney-client privilege must fail. . . ." And the Company joined this argument on the merits before the district court. Having defended as sufficient the evidence it submitted to the district court on this point, GSK may not now claim it was unfairly surprised by the argument.

■ Although the district court was correct to entertain the Commission's second argument, it erred in resolving the legal issue. The applicable standard is, as the district court recognized, whether the "the documents were distributed on a 'need to know' basis or to employees that were 'authorized to speak or act' for the company." 203 F.R.D. at 19 (quoting *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 863 (D.C.Cir.1980)). The Company's privilege log and the affidavit of Charles Kinzig establish that GSK circulated the documents in question only to specifically named employees and contractors, most of whom were attorneys or managers and all of whom "needed to provide input to the legal department and/or receive the legal advice and strategies formulated by counsel." The affidavit also states that each intended recipient was bound by corporate policy or, in the case of the contractors, by a separate understanding, to keep confidential the contents of the documents. The Company's submission thus leads ineluctably to the conclusion that no document was "disseminated beyond those persons who, because of the corporate structure, need[ed] to know its contents." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir.1977) (*en banc*).

■ The district court faulted GSK for not having explained "why any, let alone all, of the employees received copies of certain documents," 203 F.R.D. at 19, and the Commission likewise claims on brief that GSK should have shown why each individual in possession of a confidential document "needed the information [therein] to carry out his/her work." These demands are overreaching. The Company's burden is to show that it limited its dissemination of the documents in keeping with their asserted confidentiality, not to justify each determination that a particular employee should have access to the information therein. Not only would that task be Herculean — especially when the sender and the recipient are no longer with the Company — but it is wholly un-

necessary. After all, when a corporation provides a confidential document to certain specified employees or contractors with the admonition not to disseminate further its contents and the contents of the documents are related generally to the employees' corporate duties, absent evidence to the contrary we may reasonably infer that the information was deemed necessary for the employees' or contractors' work. *Compare Coastal States,* 617 F.2d at 863 (confidentiality lost when organization "admitted that it does not know who has had access to the documents, and there is undisputed testimony that ... copies of the memoranda were circulated to all area offices"). We do not presume, therefore, that any business would include in a restricted circulation list a person with no reason to have access to the confidential document—that is, one who has no "need to know." *Id.*

Moreover, we can imagine no useful purpose in having a court review the business judgment of each corporate official who deemed it necessary or desirable for a particular employee or contractor to have access to a corporate secret. It suffices instead that the corporation limited dissemination to specific individuals whose corporate duties relate generally to the contents of the documents. As we have seen in this case, the privilege log and the Kinzig Declaration together establish that GSK did just that, and the Company thereby demonstrated its entitlement to the attorney-client privilege. The FTC has proffered nothing to the contrary.

 Our conclusion that the documents are protected by the attorney-client privilege extends also to those communications that GSK shared with its public relations and government affairs consultants. The Kinzig affidavit notes that GSK's corporate counsel "worked with these consultants in the same manner as they d[id] with full-time employees; indeed, the consultants acted as part of a team with full-time employees regarding their particular assignments" and, as a result, the consultants "became integral members of the team assigned to deal with issues [that] ... were completely intertwined with [GSK's] litigation and legal strategies." In these circumstances, "there is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice." *See In re Copper Market Antitrust Litig.,* 200 F.R.D. 213, 219 (S.D.N.Y.2001).

### III. Conclusion

Because we hold the 91 documents are protected by the attorney-client privilege, we have no occasion to address GSK's other arguments, including its claim that a subset of those 91 documents are attorney work product. For the foregoing reasons, the order of the district court enforcing the subpoena is

*Reversed.*