Shirley WILLIAMS et al., Plaintiffs,

v.

SPRINT/UNITED MANAGEMENT COMPANY, Defendant.

No. 03–2200–JWL.

United States District Court,
D. Kansas.

Nov. 9, 2006.

Andrew H. McCue, Brian D. Defrain, Martin M. Meyers, The Meyers Law Firm, LC, Claudio E. Molteni, Dennis E. Egan, Stephen J. Dennis, Bert S. Braud, The Popham Law Firm, P.C., Kansas City, MO, Daniel B. Kohrman, Laurie A. McCann, Thomas W. Osborne, Washington, DC, Gene P. Graham, Jr., Deborah J. Blakely, White, Allinder, Graham & Buckley LLC, Kenneth B. McClain, Humphrey, Farrington & McClain, Independence, MO, Matthew C. Billips, Miller, Billips & Ates, PC, Atlanta, GA, Dirk L. Hubbard, John M. Klamann, Klamann & Hubbard, P.A., Overland Park, KS, for Plaintiffs.

Hector L. Rios, pro se.

Socorro Rodriquez, pro se.

Trinidad Rodriquez, pro se.

Juan Manuel Ruiz, pro se.

Sandra Serrano, pro se.

Dora Torres, pro se.

Jose A. Martinez, pro se.

Ashley R. Hurst, Hunter R. Hughes, III, J. Timothy McDonald, John Da Grosa Smith, Thomas Joseph Mew, IV, Rogers & Hardin LLP, Atlanta, GA, Chris R. Pace, Jill S. Ferrel, Stephany J. Newport, Overland Park, KS, Christine F. Miller, David L. Schenberg, Gerard K. Rodriguez, Harry B. Wilson, Jr., James F. Monafo, Joseph H. Guffey, Mark G. Arnold, Tamara M. Spicer, Thomas A. McCarthy, Husch & Eppenberger, LLC, St. Louis, MO, David A. Schatz, Patrick M. Gavin, Robert A. Costello, John J. Yates, Philip R. Dupont, Husch & Eppenberger, LLC, David M. Eisenberg, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, for Defendant.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff Shirley Williams filed this suit on behalf of herself and others similarly situated asserting that her age was a determining factor in defendant's decision to terminate her employment during a reduction-in-force (RIF). This case has been provisionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

This matter is presently before the court on plaintiffs' motion to review (doc. 4338) and objections to the magistrate judge's February 1, 2006 and July 1, 2006 orders in which the magistrate judge concluded that documents relating to an adverse impact analysis conducted by defendant are protected from discovery by the attorney-client privilege. As will be explained, the motion is granted with respect to Exhibits A through E and Exhibit L and the court remands to the magistrate judge the issue of whether defendant waived the attorney-client privilege with respect to these Exhibits by not asserting that privilege in its privilege log and, if he concludes that defendant did waive the privilege, to consider the merits of defendant's claim that the documents are protected from discovery by the work product doctrine. The motion is retained under advisement with respect to plaintiffs' assertion that defendant waived the attorney-client privilege by asserting its "good faith" compliance with the ADEA and the court will conduct a telephone conference to address this issue on Thursday, November 16, 2006 at 2:00 pm. The motion is otherwise denied.

### I. Background

In writing this memorandum and order, the court assumes familiarity with the factual background of the case as well as the magistrate judge's order underlying the motion to review. Nonetheless, for the reader's convenience, the court briefly summarizes here

the procedural history of plaintiffs' motion to review.

In September 2005, plaintiffs submitted to the magistrate judge a document entitled "List of Documents Withheld by Defendant Despite No Involvement of Legal Department or Counsel." In the document, plaintiffs asked the magistrate judge to compel defendant to produce certain documents identified in its privilege log. In support of their request, plaintiffs argued that defendant had failed to establish the elements required to invoke the attorney-client privilege or the work product doctrine with respect to those documents for which defendant failed to identify an attorney as the sender or recipient and which were described as "adverse impact," "due diligence" or "impact ratio" documents.[1] The magistrate judge construed the document as a motion to compel and the parties subsequently briefed the issue of whether the "adverse impact" or "due diligence" documents identified on defendant's privilege log were immune from discovery by virtue of the attorney-client privilege or the work product doctrine. On February 1, 2006, the magistrate judge issued a written order denying plaintiffs' motion to compel on this issue [2] and concluding that defendant had met its burden of proof with regard to a claim of attorney-client privilege for the documents described in its privilege log as "adverse impact" and "due diligence."

On February 20, 2006, plaintiffs filed a motion to review (doc. 3605) that portion of the magistrate judge's February 1, 2006 order denying the motion to compel those documents identified by defendant on its privilege log as "adverse impact" documents or "due diligence" documents. In their motion to review, plaintiffs asked the court to defer ruling on the motion until after the magistrate judge resolved related issues that had emerged during the pendency of the motion to compel. Specifically, in January 2006, defendant inadvertently produced to plaintiffs during discovery sixty-five "adverse impact" or "due diligence" documents that defendant then sought to recall based on the attorney-client privilege. Plaintiffs, by letter, then asked the magistrate judge to conduct an in camera review of the sixty-five documents and to resolve defendant's claim of privilege with respect to the sixty-five documents. The court construed plaintiffs' letter as a motion for relief and the parties submitted briefs with respect to the motion. This court, then, retained plaintiffs' February 2006 motion to review under advisement to permit the magistrate judge to determine whether the sixty-five documents inadvertently produced to plaintiffs (and, by agreement of the parties, all similar adverse impact or due diligence documents) were protected from disclosure by the attorney-client privilege.

After reviewing the parties' briefs filed in connection with plaintiffs' motion for relief as well as the sixty-five documents inadvertently produced, the magistrate judge was unable to determine whether the documents constituted mere compilations of underlying data generated and utilized by employees in defendant's human resources department (as asserted by plaintiffs) or whether the documents constituted statistical analyses undertaken at the direction of defendant's counsel (as asserted by defendant). The magistrate judge, then, conducted a closed evidentiary hearing over the course of two days in March 2006 regarding the use and creation of the

---

1. These documents generally are spreadsheets reflecting various statistical analyses comparing the demographic data (gender, race and age) of employees targeted for layoff in the RIF at issue in this case to the demographic data of those employees defendant intended to retain in the RIF. Defendant maintains that these analyses were conducted at the specific request of its counsel for the purpose of obtaining legal advice regarding the statistical impact on various classes of persons protected by the federal anti-discrimination laws. Plaintiffs insist that the adverse impact documents are merely compilations of underlying data independently generated and

utilized by employees in defendant's human resources department.

2. Other issues not relevant to the adverse impact documents were raised by plaintiffs' motion to compel and were addressed in the magistrate judge's February 1, 2006 order. The magistrate judge granted certain aspects of plaintiffs' motion and denied certain aspects of the motion. For purposes of plaintiffs' motion to review, however, only that portion pertaining to the adverse impact documents is pertinent.

adverse impact documents. At the hearing, defendant introduced into evidence each of the sixty-five documents inadvertently produced during discovery and the magistrate judge heard testimony from various witnesses concerning the use and creation of the adverse impact documents. In addition, defendant submitted for in camera review during the hearing various additional documents, including transmittal e-mails showing that certain adverse impact documents had been provided to defendant's counsel as well as a copy of an October 5, 2001 memorandum from Jill Ferrel (the "Ferrel Memorandum"),[3] an attorney in defendant's legal department, to other attorneys in the legal department and certain human resources employees.

On July 1, 2006, the magistrate judge issued a written order in which he concluded that the documents inadvertently produced to plaintiffs were protected from disclosure by the attorney-client privilege and directed plaintiffs to return the documents to defendant. The magistrate judge further denied plaintiffs' request for production of all similar adverse impact documents. Specifically, the magistrate judge concluded that the adverse impact documents constituted communications made for the purpose of obtaining legal advice and at the direction of counsel (pursuant to the Ferrel Memorandum), that the documents were kept confidential and that defendant had not waived the privilege through its inadvertent production to plaintiffs, through the deposition testimony of one of defendant's witnesses or through its assertion of a "good faith" affirmative defense. Plaintiffs filed a motion for reconsideration on several grounds and, on September 13, 2006, the magistrate judge denied that motion in its entirety.

Plaintiffs then filed their motion to review (doc. 4338) the magistrate judge's February 1, 2006 and July 1, 2006 orders. In their motion, plaintiffs assert that the magistrate judge erred as follows: (1) in concluding that the adverse impact documents are protected from disclosure by the attorney-client privi-

lege; (2) in rejecting plaintiffs' argument that defendant had waived the attorney-client privilege (or could not establish the privilege in the first instance) because the adverse impact documents were disseminated beyond those persons who needed to know the documents' contents; (3) in concluding that the adverse impact documents, in their entirety, are privileged and in impliedly rejecting plaintiffs' argument that certain portions of the adverse impact documents are not privileged and are subject to discovery; (4) in concluding that defendant did not waive the attorney-client privilege with respect to those documents for which defendant, on its privilege log, claimed only work product protection; and (5) in rejecting plaintiffs' argument that defendant's assertion in its answer to plaintiffs' second amended complaint that defendant had engaged in good faith efforts to comply with the ADEA was sufficient to require disclosure of otherwise privileged communications.

Plaintiffs' motion to review has been fully briefed by the parties and, thus, this motion as well as plaintiffs' previous motion to review (doc. 3605) which the court retained under advisement are now ripe for this court's resolution. As set forth in detail below, both motions are granted in part, denied in part and retained under advisement in part.

## II. Applicable Standard

Magistrate judges may issue orders as to non-dispositive pretrial matters and district courts review such orders under a "clearly erroneous or contrary to law" standard of review. *First Union Mortgage Corp. v. Smith,* 229 F.3d 992, 995 (10th Cir.2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1461–62 (10th Cir.1988)); 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). The clearly erroneous standard applies to factual findings, *see* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3069, at 355 (2d ed.1997) (and cases cited therein), and requires that the district court affirm unless

---

**3.** In February 2004, this court held that the Ferrell Memorandum was protected from disclosure

by the attorney-client privilege.

it is left with the "definite and firm conviction that a mistake has been committed." *Ocelot Oil,* 847 F.2d at 1464 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). By contrast, the "contrary to law" standard permits "plenary review as to matters of law." *See* Charles Alan Wright, Arthur R. Miller & Richard L. Marcus *supra,* § 3069, at 355; *Haines v. Liggett Group Inc.,* 975 F.2d 81, 91 (3rd Cir.1992); *Computer Economics, Inc. v. Gartner Group, Inc.,* 50 F.Supp.2d 980, 983 (S.D.Cal.1999) ("contrary to law" standard permits independent review of purely legal determinations by a magistrate judge); *Weekoty v. United States,* 30 F.Supp.2d 1343, 1344 (D.N.M.1998) (when reviewing legal determinations made by magistrate judge, standard of review is de novo).

### III. Documents Exchanged Exclusively Among HR Personnel

In their motion to review, plaintiffs first contend that the magistrate judge erred in concluding that the adverse impact documents were made at the direction of counsel for the purpose of obtaining legal advice. According to plaintiffs, the evidence submitted at the hearing simply does not support the magistrate judge's conclusion. Specifically, plaintiffs contend that the evidence was either insufficient to establish that each of the adverse impact documents was sent to counsel or affirmatively established that certain adverse impact documents were never sent to counsel; rather, these adverse impact documents were exchanged exclusively among HR personnel, who manipulated the RIF decisional units in an effort to achieve "better" statistics (in terms of reflecting an adverse impact) before sending a final draft of the spreadsheets to counsel. As will be explained, even assuming that certain adverse impact documents were never sent to counsel and were exchanged exclusively among HR personnel for the purpose of manipulating the decisional units to achieve better statistics,[4] the court finds no error in the magistrate judge's conclusion that such docu-

ments are nonetheless protected by the attorney-client privilege.

■ As an initial matter, plaintiffs presented this argument to the magistrate judge, who expressly rejected it in his July 1, 2006 memorandum and order:

> The Court is not persuaded by this argument. The essential elements of the privilege as defined above do not require an attorney to have either authored or received the document at issue in order to maintain the privilege. A party may successfully demonstrate applicability of the privilege to written communication between corporate management employees by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice. Organizational clients and business entities often are personified by a number of employees. In preparation for, or in the midst of, consultations with an attorney, employees of the client will often consult one another to ensure that the attorney's advice is based on full knowledge of all relevant facts.

*See* Memo. & Order at 14–15 (July 1, 2006). Much of the legal foundation for the magistrate judge's analysis was laid in the judge's February 1, 2006 memorandum and order, in which he cited more than ten cases recognizing that communications among non-attorneys in a corporation may be privileged if made at the direction of counsel, to gather information to aid counsel in providing legal services. *See* Memo. & Order at 5–7 & n. 21. While the list of cases cited by the magistrate judge was certainly not meant to be exhaustive, the court's own research has uncovered numerous additional cases recognizing that the attorney-client privilege extends to communications made within a corporation if those communications are made for the purpose of securing legal advice. *See In re Rivastigmine Patent Lit.,* 237 F.R.D. 69, 80 (S.D.N.Y.2006); *SmithKline Beecham Corp. v. Apotex Corp.,* 232 F.R.D. 467, 477 (E.D.Pa. 2005) (citing *Santrade, Ltd. v. Gen. Elec. Co.,*

---

4. While the court makes this assumption for purposes of resolving the motion to review, the court notes that the magistrate judge specifically found that the majority of the adverse impact docu-

ments were transmitted to defendant's counsel via e-mail and that, on other occasions, adverse impact documents were hand-delivered to counsel during attorney-client meetings.

150 F.R.D. 539, 545 (E.D.N.C.1993)); *Valve Corp. v. Sierra Entertainment Inc.*, 2004 WL 3780346, at *2 (W.D.Wash. Dec. 6, 2004); *Adams v. Gateway, Inc.*, 2003 WL 23787856, at * 11 (D.Utah Dec. 30, 2003); *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 514 (S.D.Cal. 2003).

Significantly, plaintiffs do not direct the court to any cases suggesting that the rule should be otherwise and they challenge only two cases cited by the magistrate judge-*Eutectic Corp. v. Metco, Inc.*, 61 F.R.D. 35 (E.D.N.Y.1973), and *United States v. Kovel*, 296 F.2d 918 (2d Cir.1961). According to plaintiffs, neither *Eutectic* nor *Kovel* "supports the magistrate's conclusion that a lawyer does not have to be connected in some way to an intra-corporate communication for the privilege to apply." Of course, the magistrate judge did not conclude that counsel did not have to be connected in any way to a communication for the privilege to apply. Rather, he concluded that communications between non-attorneys could nonetheless be privileged so long as the communications were made in confidence for the purpose of obtaining legal advice from counsel. Both *Eutectic* and *Kovel* fully support this conclusion. As the Second Circuit explained in *Kovel*:

> [I]f the lawyer has directed the client, either in the specific case or generally, to tell his story in the first instance to an accountant engaged by the lawyer, who is then to interpret it so that the lawyer may better give legal advice, communications by the client reasonably related to that purpose ought fall within the privilege; there can be no more virtue in requiring the lawyer to sit by while the client pursues these possibly tedious preliminary conversations with the accountant than in insisting on the lawyer's physical presence while the client dictates a statement to the lawyer's secretary or in interviews by a clerk not yet admitted to practice. What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer.

*Kovel*, 296 F.2d at 922; *accord Eutectic*, 61 F.R.D. at 40 (privilege applied to documents communicated among non-attorneys where documents "contained information collected for the dominant purpose of facilitating the attorney's efforts to provide services to the client, and the information in every instance was, in one form or another, communicated to the attorney").

■ Suffice it to say, the court is convinced that the mere fact that certain adverse impact documents were shared only among HR personnel is not necessarily fatal to defendant's claim of privilege. The remaining question, then, is whether the magistrate judge correctly concluded that these documents, assuming they were shared only among HR personnel and further assuming that HR personnel manipulated the decisional units on various drafts to obtain better statistics before sending a final draft to counsel, were made for the purpose of obtaining legal advice.

In support of his conclusion, the magistrate judge relied first on the October 5, 2001 Ferrel Memorandum. This memorandum, written by an attorney in defendant's legal department and issued to other attorneys and HR personnel, is stamped "Privileged Attorney–Client Advice" and the subject line of the memorandum designates "Adverse Impact Analysis" as the subject. The Ferrel Memorandum explains the meaning of the phrase "adverse impact" and explains the process by which defendant's legal department will perform an adverse impact analysis with respect to the RIF. Moreover, the Ferrel Memorandum specifically directs HR personnel to compile certain data on each employee in a given decisional unit so that the legal department can provide legal advice regarding the statistical impact of the RIF on various protected groups under the federal anti-discrimination laws. The Memorandum also directs HR personnel to utilize a specific methodology in gathering and presenting the data, including the use of spreadsheets and matrices reflecting specific calculations. Significantly, the adverse impact documents reviewed by the magistrate judge present the requested data in the specific formula and format prescribed by Ms. Ferrel in her October 5, 2001 memorandum.

In addition, several witnesses at the evidentiary hearing testified that the adverse impact documents were prepared pursuant to the methodology dictated by the legal department pursuant to the Ferrel Memorandum.[5] These witnesses also testified that the adverse impact documents were prepared at the direction of counsel—again, pursuant to the Ferrel Memorandum—and that the documents were used to "initiate conversation" (see, e.g., March 10, 2006 Testimony of Jim Kissinger at 73) with the legal department so that the legal department could conduct an adverse impact analysis and provide advice to HR personnel in the RIF process. Defendant's witnesses further testified that the adverse impact documents were not used for any purpose other than to facilitate the provision of legal advice. The magistrate judge credited the testimony of these witnesses and this testimony, together with the content of the Ferrel Memorandum and the format of the documents themselves, caused the magistrate judge to conclude that each of the adverse impact documents were made for the purpose of obtaining legal advice.

Plaintiffs contend that the magistrate judge erred in "accepting" defendant's witnesses' "dutiful recitation" of the purpose and use of the adverse impact documents and that the witnesses' "conclusory assertions" are insufficient to satisfy defendant's burden to prove the applicability of the privilege. As an initial matter, the court has reviewed the transcripts from the evidentiary hearing; the testimony of defendant's witnesses concerning the creation, use and purpose of the adverse impact documents cannot be described as "conclusory." Indeed, the testimony of each witness on these subjects was the result of detailed questioning by both defense counsel and plaintiffs' counsel. While plaintiffs suggest that defendant's witnesses did not testify truthfully (or perhaps credibly), their argument would require the court to reweigh the evidence and substitute the court's view for that of the magistrate judge, which the court is not permitted to do. See State Farm Mut. Auto. Ins. Co. v. Vicente, 1997 WL 82476, at *1 (10th Cir. Feb.27, 1997).

In light of the foregoing, the court finds no error in the magistrate judge's conclusion that the adverse impact documents—regardless of whether the documents themselves were ultimately transmitted to counsel—constituted communications made for the purpose of obtaining legal advice. The evidence fully supports the conclusion that HR personnel, in creating the adverse impact documents, were essentially acting under the authority and control of counsel. To the extent such documents (or drafts of documents) were exchanged among HR personnel exclusively, this does not change the conclusion that the documents were created and used to obtain legal advice, as the documents were exchanged among personnel for the purpose of channeling pertinent information to counsel for assessment or, as Mr. Kissinger testified, for the purpose of "initiating conversation" with counsel on the adverse impact issue. Moreover, to the extent HR personnel were manipulating decisional units on earlier drafts,[6] the court is not persuaded that these actions are inconsistent with provision of legal advice. Indeed, the Ferrel Memorandum expressly contemplated an analysis of various decisional units depending on the existence of certain circumstances. Plaintiffs' first objection, then, is overruled.

---

**5.** Plaintiffs contend that the magistrate judge's reliance on the Ferrel Memorandum is misplaced because the evidence demonstrated that some of the adverse impact documents were created before the Ferrel Memorandum was issued. This argument was presented to the magistrate judge, who rejected it in his September 13, 2006 order denying the motion for reconsideration. As explained by the magistrate judge, the adverse impact spreadsheets were simply one page of a larger electronic document and, thus, while the larger electronic document may reflect a pre-October 5, 2001 creation date, no evidence supports plaintiffs' argument that the particular adverse impact document within the larger document was created prior to the Ferrel Memorandum.

**6.** To be clear, the "manipulation" (plaintiffs' word choice) of decisional units to obtain better statistics does not suggest a change in any particular termination decision. Rather, it suggests only that HR personnel would expand, limit or otherwise modify the "unit" of employees in which an employee selected for termination was grouped.

## IV. Waiver by Defendant's Failure to Keep the Documents Confidential

Plaintiffs further assert that the magistrate judge erred in rejecting plaintiffs' argument that defendant had waived the attorney-client privilege (or could not establish the privilege in the first instance) because the adverse impact documents were disseminated beyond those persons who needed to know the documents' contents. According to plaintiffs, the evidence at the hearing was insufficient to establish, with respect to each and every matrix, that the matrix was provided only to those individuals with a need to know the contents of the document. Plaintiffs further assert that the evidence actually established that certain matrices were communicated to individuals who had no need to know the contents of the document.

In his July 1, 2006 order, the magistrate judge acknowledged that "confidentiality is the key" to the attorney-client privilege and that the privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party. *See In re Qwest Comms. Intern. Inc.,* 450 F.3d 1179, 1185 (10th Cir.2006). The magistrate judge concluded that defendant had kept the adverse impact documents confidential, highlighting evidence that all such documents were protected by a password available only to HR and Legal Department personnel and that the vast majority (all but four) of the documents were marked "Sprint—Internal Use Only Confidential." The magistrate judge also found, with specific reference to the testimony presented at the hearing, that recipients of the adverse impact documents were aware of the confidential nature of the information and that the purpose of the information was to obtain legal advice.

█ Plaintiffs do not challenge these findings, but challenge only the magistrate judge's additional finding that the adverse impact documents were "disseminated only to those individuals who had some stated purpose in receiving them." *See* Memo. & Order at 19 (July 1, 2006). According to plaintiffs, the magistrate judge's "stated purpose" test is contrary to law and, in any event, the evidence at the hearing was insufficient to satisfy that test or the more stringent "need to know" test. As will be explained, the court assumes that plaintiffs' articulation of the "need to know" test is the applicable standard in determining whether otherwise privileged documents have been kept confidential. Even still, the court concludes that the magistrate judge did not err in concluding that defendant had met its burden of establishing that it had kept the adverse impact documents confidential.

In support of his conclusion that defendant had kept the adverse impact documents confidential, the magistrate judge found that the documents were distributed only to those individuals who had "some stated purpose" in receiving the documents; the judge made no findings as to whether the recipients had a "need to know" the contents of the documents. According to plaintiffs, the appropriate standard in determining whether a particular document was kept confidential is not whether the recipients had a purpose in receiving the document but whether the recipients had a "need to know" the contents of the document. While the Tenth Circuit has not yet had the opportunity to determine whether the "need to know" standard is the appropriate standard in determining whether documents disseminated to other persons have nonetheless been kept confidential, there is ample support for plaintiffs' argument that the "need to know" test is the appropriate test. *See, e.g., FTC v. GlaxoSmithKline,* 294 F.3d 141, 147 (D.C.Cir.2002) ("The applicable standard is, as the district court recognized, whether the documents were distributed on a 'need to know' basis or to employees that were 'authorized to speak or act' for the company."); *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 609 (8th Cir.1977) (key to analyzing whether document was kept confidential is whether the document was "disseminated beyond those persons who, because of the corporate structure, needed to know its contents.").

Ultimately, the court need not decide which test is the appropriate test because the court concludes that the magistrate judge's conclusion should be affirmed even under the more stringent "need to know" test. Significantly, plaintiffs' complaint with respect to the magistrate judge's decision is that defen-

dant failed to establish that each and every recipient of each and every adverse impact document had a "need to know" the contents of that document. The D.C. Circuit addressed the same argument in *FTC v. GlaxoSmithKline (GSK)*. In *GSK*, the Federal Trade Commission petitioned the district court to enforce a petition issued by the Commission directing GSK to produce various documents concerning Paxil, a drug manufactured by GSK. 294 F.3d at 143–44. The parties ultimately resolved through negotiation their differences over the disclosure of thousands of documents, leaving unresolved the status of only 91 documents that GSK declined to produce on the grounds that they were shielded by the attorney-client privilege. *Id.* at 144. Before the district court, the Commission argued that GSK's assertions of privilege were invalid because GSK had forfeited its claim to confidentiality by disseminating all 91 documents widely both within GSK and to consultants and other third-parties. *Id.*

The district court ordered GSK to produce the 91 documents, concluding that GSK had not sustained its burden of demonstrating that the relevant documents were distributed on a "need to know" basis or to employees that were authorized to speak or act for GSK. *Id.* at 145. Specifically, the district court "faulted GSK for not having explained 'why any, let alone all, of the employees received copies of certain documents.'" *Id.* at 147. Likewise, on appeal, the Commission argued that "GSK should have shown why each individual in possession of a confidential document 'needed the information [therein] to carry out his/her work.'" *Id.* The D.C. Circuit reversed the district court, holding that the 91 documents were protected by the attorney-client privilege. *Id.* at 148. In so doing, the Circuit stated that the demands placed on GSK by the district court and urged by the Commission were "overreaching." *Id.* at 147. As the Circuit explained:

> The Company's burden is to show that it limited its dissemination of the documents in keeping with their asserted confidentiality, not to justify each determination that a particular employee should have access to the information therein. Not only would that task be Herculean—especially when the sender and recipient are no longer with the Company—but it is wholly unnecessary. After all, when a corporation provides a confidential document to certain specified employees or contractors with the admonition not to disseminate further its contents and the contents of the documents are related generally to the employees' corporate duties, absent evidence to the contrary we may reasonably infer that the information was deemed necessary for the employees' or contractors' work.

*Id.* at 148.

The court finds the D.C. Circuit's opinion in *GSK* persuasive and, in the absence of any Tenth Circuit authority suggesting that the rule should be otherwise, looks to *GSK* for guidance in resolving plaintiffs' claim that defendant was required to prove that each recipient of each adverse impact document had a "need to know" the contents of the document. As noted above, the magistrate judge found that all adverse impact documents were protected by a password available only to HR and Legal Department personnel, that the vast majority of the documents were marked "Sprint—Internal Use Only Confidential," and that the recipients of the adverse impact documents were aware of the confidential nature of the information and that the purpose of the information was to obtain legal advice. Plaintiffs do not challenge these findings in any respect. Moreover, the record reflects that the adverse impact documents are related generally to the corporate duties of the recipients. For example, Deb Sprayberry and Gina Eisler, two employees who received copies of the adverse impact documents and who plaintiffs contend had no "need" for at least some of these documents, were both managers in defendant's HR department, were intimately involved in the RIF and were required to address issues that were completely intertwined with defendant's ongoing legal analysis of whether certain RIF decisions had an adverse or disparate impact on a protected class of employees. Plaintiffs have offered no evidence to the contrary.[7] In sum, then,

7. Plaintiffs contend that defendants failed to

prove that Ms. Sprayberry had a "need to know"

the evidence at the hearing established that defendant limited dissemination of the adverse impact documents to specific individuals whose corporate duties related generally to the contents of the documents. The magistrate judge, then, was correct in determining that defendant kept the documents confidential.

## V. Discoverability of Data Summarized in the Adverse Impact Documents

 Plaintiffs contend that the magistrate judge erred in concluding that the adverse impact documents, in their entirety, are privileged. According to plaintiffs, the summary data extracted from the Master Lists and RIF Lists and reproduced in the "top two boxes" of the adverse impact documents is not privileged and is subject to discovery, regardless of whether the remaining portions of the adverse impact documents are privileged. In his September 13, 2006 order denying plaintiffs' motion for reconsideration, the magistrate judge held that plaintiffs had waived this argument by not asserting it until the filing of their motion for reconsideration. In the alternative, the magistrate judge concluded that the entirety of the documents at issue, including the information extracted from the Master and RIF Lists (lists which, in any event, had already been produced to plaintiffs)—constituted a communication made in confidence for the purpose of obtaining legal advice such that no portion of the documents were discoverable.

Plaintiffs contend that the magistrate judge's conclusion that plaintiffs had waived the argument is incorrect. According to plaintiffs, they raised this argument in their January 3, 2006 surreply to defendant's motion for a protective order precluding plaintiffs from questioning deponents regarding defendant's adverse impact analyses (doc. 3525); in their January 31, 2006 reply to defendant's response to plaintiffs' motion for in camera review of the inadvertently disclosed documents (doc. 3553); and in their February 9, 2006 letter to the magistrate judge. Plaintiffs also assert that their post-hearing brief (doc. 3847) reiterated this argument. The court has carefully reviewed each of the documents referenced by plaintiff and, without exception, finds no such argument therein.

Plaintiffs' January 3, 2006 surreply; January 31, 2006 reply; and post-hearing brief reflect only plaintiffs' argument that the *entirety* of the adverse impact documents are discoverable because the documents consisted of "just numbers," "mathematical calculations," and "data compilations"; in other words, as argued by plaintiffs in these briefs, the documents as a whole contained only factual information and not legal advice.[8] No

the contents of the matrices reflected in Exhibits PP, QQ and RR because Ms. Sprayberry testified that she received these particular matrices after the legal department had completed its adverse impact analysis and review with respect to those matrices and that Ms. Sprayberry only received the documents for "final retention" purposes. Contrary to plaintiffs' assertion, Ms. Sprayberry's testimony does not unequivocally establish that she did not have a "need to know" the contents of Exhibits PP, QQ and RR. Ms. Sprayberry's testimony, considered in full, establishes that her duties as the Manager of Regional HR Operations required her to guide her subordinate HR managers through the adverse impact process, including assisting her managers in creating the adverse impact matrices. With respect to Exhibits PP, QQ and RR, the evidence establishes that Ms. Sprayberry essentially managed the process through which those exhibits were ultimately created. *See* Testimony of Deborah Sprayberry, Sealed Transcript of Proceedings Held 3.10/2006 at pp. 142–44. Without question, then, Exhibits PP, QQ and RR related to Ms. Sprayberry's duties.

8. In their reply to defendant's response to their motion to review, plaintiffs, by way of example, state that their January 3, 2006 surreply raised the very argument presented here as follows: "The only portion of the document is that is not a demographic fact or a mathematically-derived percentage based upon these demographic facts is the box which states: 'Percentage is less than 80%, Possible Adverse Impact.' " A full reading of the passage from which this one sentence is excerpted, however, reveals that plaintiffs were not contending that selected portions of the matrices should be discoverable in the event the documents were otherwise deemed privileged. Rather, plaintiffs were arguing (as they have consistently argued) that the entire document was discoverable because it did not constitute legal advice, as evidenced by the sentence in plaintiffs' January 3, 2006 surreply that follows the single sentence highlighted by plaintiffs: "This is a recitation of precisely that which Sprint earlier represented to the Court was not law applicable to this request for adverse impact data and therefore it cannot be legal advice as it is not the law."

argument is made that *selected portions* of the documents are discoverable even if the documents are otherwise deemed privileged. While plaintiffs' February 9, 2006 letter to the magistrate judge addresses the issue of whether certain portions of the adverse impact documents constitute data summaries as opposed to legal advice, that issue is addressed in response to the magistrate judge's specific request that the parties advise him as to whether "the parties could reach some agreement" about whether certain portions of each matrix were "data summaries as opposed to legal advice." In other words, the issue was actually raised by the magistrate judge in the context of inquiring whether the parties could come to an agreement as to some portions of the documents and plaintiffs, in asserting that certain portions were merely data compilations, were responding to the judge's request and not asserting an independent argument in connection with the subsequent evidentiary hearing. Moreover, while it is not entirely clear from plaintiffs' letter, the letter does not seem to suggest, like plaintiffs do here, that the "top two boxes" of a given matrix constitute data compilations; rather, the letter suggests only that the "summary numerical demographic information that is contained in the left column" of a given matrix constitutes data compilations that should be produced. In other words, plaintiffs' letter and plaintiffs' motion to review appear to challenge two entirely different portions of the matrices. The court, then, concludes that the February 9, 2006 letter is insufficient to preserve the specific issue now raised by plaintiffs.

Plaintiffs also suggest that this argument was made at the hearing itself by virtue of the fact that plaintiffs introduced the deposition testimony of Eric Rice, who testified that the information "in the top two boxes" of a given adverse impact matrix was manually drawn from Master and RIF Lists and the fact that plaintiffs "elicited 'just numbers' and 'no legal advice' testimony from the witnesses Sprint called at the hearing." The testimony of Mr. Rice, however, simply establishes that certain information on the adverse impact documents was extracted from the Master and RIF Lists. In and of itself, the testimony does not suggest an argument that the "top two boxes" contains nonprivileged information that should be discoverable even if the document is otherwise deemed privileged. The testimony elicited by plaintiffs from defendant's witnesses at the hearing simply lends support to the argument that is asserted by plaintiffs in their briefing—that the entirety of the adverse impact documents are discoverable because the information contained therein is factual information ("just numbers" or "mathematical calculations") and not legal advice. This testimony does not speak to the issue of whether selected portions of the documents should be discoverable in the event the document is otherwise deemed privileged.

For the foregoing reasons, the court affirms the magistrate judge's conclusion that plaintiffs waived any argument that selected portions of the adverse impact documents are discoverable. *See Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir.2003) (argument raised for the first time in reply brief is waived) (citing *Coleman v. B–G Maintenance Management*, 108 F.3d 1199, 1205 (10th Cir.1997) (issues not raised in the opening brief are deemed abandoned or waived)). The court, then, declines to address the magistrate judge's holding regarding the merits of plaintiffs' argument.

## VI. Waiver by Defendant's Failure to Designate Protection Based on the Attorney–Client Privilege

It is undisputed that defendant, in its privilege log, did not designate protection based on the attorney-client privilege for certain adverse impact documents (Exhibits A through E and Exhibit L). With respect to these documents, defendant asserted protection based only on the work product doctrine. Before the magistrate judge, plaintiffs urged that defendant had waived any assertion of the attorney-client privilege with respect to these particular adverse impact documents by failing to assert the privilege on its privilege log. The magistrate judge did not expressly address this argument in his July 1, 2006 order, but impliedly rejected it by holding that all adverse impact documents were protected from disclosure by the attorney-client privilege.

In his September 13, 2006 order denying plaintiffs' motion to reconsider, the magistrate judge expressly considered and rejected plaintiffs' argument. In so doing, the magistrate judge first highlighted the language of Federal Rule of Civil Procedure 12(b)(5), which governs notification when a claim of privilege is asserted:

> When a party withholds information that is otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner than, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed.R.Civ.P. 26(b)(5). The magistrate judge then concluded that because Exhibits A through E and Exhibit L had been inadvertently disclosed to plaintiffs and then recalled on grounds of attorney-client privilege, the documents were not "withheld" for purposes of Rule 26(b)(5). Thus, the magistrate judge concluded that the notification requirements of Rule 26(b)(5) did not apply to these particular documents and that the disclosure requirements of Rule 26(b)(5) were otherwise satisfied in light of the fact that plaintiffs' counsel had the opportunity to review the contents of the documents to assess the applicability of the privilege. In their motion to review, plaintiffs assert that the magistrate judge erred in concluding that defendant did not waive the attorney-client privilege with respect to those documents for which defendant, on its privilege log, claimed only work product protection.

The magistrate judge's distinction between those documents which have been withheld and those documents which have been inadvertently produced and then recalled is a reasonable one and is supported by the proposed amendment to Rule 26(b)(5) that will become effective December 1, 2006. Pursuant to that amendment, Rule 26(b)(5) will be amended to contain two subparts, Rule 26(b)(5)(A) and Rule 26(b)(5)(B). Rule 26(b)(5) as it currently reads in its entirety will become Rule 26(b)(5)(A) and will be subtitled "Information Withheld." Rule 26(b)(5)(B), which encompasses the situation addressed by the magistrate judge in this case, will read as follows:

> **(B) Information Produced.** If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The producing party must preserve the information until the claim is resolved.

As noted in the advisory committee notes to the 2006 amendment to Rule 26(b)(5), the current rule provides a procedure for claiming privilege with respect to information that has been withheld (typically, by providing a "privilege log") and the new subdivision provides a procedure for a party to assert a claim of privilege after the information has been produced in discovery.

According to the magistrate judge's analysis, however, the fact that the documents were inadvertently produced permits defendant to assert a claim of attorney-client privilege after production even though defendant provided a privilege log identifying these documents as protected only by the work product doctrine.[9] The court disagrees. The court understands the rationale (reflected in the amendment to Rule 26(b)(5)) for drawing a distinction between the treatment of documents which have been withheld and those that are inadvertently produced in

---

**9.** The issue of whether the privilege that defendant asserted after production was waived as a result of the production itself is not addressed by new Rule 26(b)(5)(B), *see* adv. comm. notes, and that issue is not raised by plaintiffs in their motion to review.

those situations where the documents which have been inadvertently produced have not been previously withheld. Here, however, Exhibits A through E and Exhibit L were withheld subject to a privilege log and were later produced inadvertently. An argument can be made, then, that defendant waived the attorney-client privilege with respect to Exhibits A through E and Exhibit L at the time it provided a privilege log asserting only work product protection for these documents. In that case, defendant would have had no privilege to assert once the documents were inadvertently disclosed. The result of the magistrate judge's order, then, arguably places defendant in a better position for having inadvertently produced documents for which it had already waived the attorney-client privilege.

The magistrate judge, however, is in the best position to evaluate in the context of this case whether defendant, by failing to assert the attorney-client privilege in its privilege log, waived the privilege. The court, then, remands this matter to the magistrate judge to consider whether defendant waived the attorney-client privilege by not asserting that privilege in its privilege log and, if he concludes that defendant did waive the privilege, to consider the merits of defendant's claim that the documents are protected from discovery by the work product doctrine (an issue that the magistrate judge declined to address in his July 1, 2006 order in light of his conclusion that all the documents were protected by the attorney-client privilege).[10]

## VII. Waiver by Defendant's Assertion of Good Faith Compliance with the ADEA

Finally, plaintiffs contend that the magistrate judge erred in rejecting their argument that defendant's assertion in its answer to plaintiffs' second amended complaint that defendant had engaged in good faith efforts to comply with the ADEA was sufficient to require disclosure of otherwise privileged communications. In other words, plaintiffs contend that defendant waived any privilege with respect to the adverse impact documents by affirmatively asserting in its answer its good faith efforts to comply with the ADEA during the RIF process. In rejecting plaintiffs' argument, the magistrate judge concluded that the mere assertion of an affirmative defense was not sufficient, in and of itself, to "place the advice of counsel at issue." *See* Memo. & Order at 24–25 (July 1, 2006) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 2005 WL 2436662 (E.D.Pa. Sept. 28, 2005) ("Only if the defendant elects to offer evidence to disprove the claim, and relies upon the attorney's advice to do so, will the plaintiff be given access to protected communications.")).[11]

■ Plaintiffs' argument—that defendant in this case has waived the attorney-client privilege by merely asserting in its answer that it acted in "good faith"—necessarily requires an application of the "automatic waiver" rule. As explained by the Tenth Circuit, the automatic waiver rule "provides that a

10. It appears to the court that the record is complete with respect to the issue of whether defendant waived the privilege by not asserting it in its privilege log and the issue of whether the Exhibits are protected by the work product doctrine. Nonetheless, if the magistrate judge believes he needs additional input from the parties on one or both of these issues, the court suggests that the magistrate judge conduct a hearing, without the need for additional briefing, to expedite the resolution of this matter. In that regard, the court requests that the magistrate judge resolve this matter no later than December 8, 2006.

11. It appears that the magistrate judge, by citing the Eastern District of Pennsylvania case and noting that defendant had not placed the "advice of counsel at issue," impliedly held plaintiffs to the most restrictive approach to waiver adopted by the Third Circuit in *Rhone–Poulenc Rorer Inc.*

*v. Home Indem. Co.*, 32 F.3d 851, 863–64 (3d Cir.1994). The court need not decide whether the Circuit would adopt this approach because, as explained in the text, the court concludes that the Circuit would reject the liberal approach to waiver urged by plaintiffs. *See Frontier Refining Inc. v. Gorman–Rupp Co.*, 136 F.3d 695, 699–700 (10th Cir.1998) (explaining three general approaches to waiver—the liberal "automatic waiver" rule; an intermediate test set forth by *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash.1975), which provides that the privilege is waived only when the material to be discovered is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense of the case; and a restrictive test pursuant to which a litigant waives the privilege only if he directly puts the attorney's advice at issue in the litigation).

litigant automatically waives the privilege upon assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant." *Frontier Refining Inc. v. Gorman–Rupp Co.*, 136 F.3d 695, 699 (10th Cir.1998). The "automatic waiver" rule, however, has been flatly rejected by the Tenth Circuit in *Frontier.* In concluding that Wyoming would not adopt the "automatic waiver" rule,[12] the Circuit explained that the rule "has been roundly criticized in the circuits, does not adequately account for the importance of the attorney-client privilege to the adversary system, and is more applicable to constitutional, rather than attorney-client, privileges." *Id.* at 700. Thus, plaintiffs' argument that defendant waived the privilege simply by asserting "good faith" in its answer is foreclosed by *Frontier* and the magistrate judge correctly rejected the argument.

Plaintiffs, however, further contend that the magistrate judge's ruling disregards and is contrary to *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994), a decision which, in turn, relies on *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.1991). In *Cox*, the Eleventh Circuit concluded that one of the defendants in the RICO action had waived the attorney-client privilege by injecting into the case the issue of its knowledge of the law and its asserted belief that its actions were lawful. 17 F.3d at 1418–19. Significantly, that defendant had "consistently taken the position" that it believed its conduct to be lawful and, in support of its contention, intended to present evidence tending to show that it intended to comply with the law. *See id.* at 1418. Similarly, the criminal defendant in *Bilzerian* announced prior to trial his intention to testify that he believed in good faith that certain disclosures he made to the SEC were legal. *See id.* at 1419. The district court advised the defendant that his testimony in that regard would be sufficient to waive the attor-

ney-client privilege and the Second Circuit affirmed that decision. *Id.* (citing *Bilzerian*, 926 F.2d at 1292).

The record before the court does not reflect whether the circumstances present in *Cox* and *Bilzerian* are present in this case. In other words, the court cannot discern on the record before it what defendant means by its use in its answer of the phrase "good faith" and, more specifically, the facts on which defendant bases its "good faith" assertion (e.g., defendant's legal department advised defendant that its RIF decisions did not run afoul of the ADEA; it had general knowledge of the ADEA's requirements and did not believe its RIF decisions violated the ADEA). In turn, the court does not know whether what defendant does mean by "good faith" and the facts upon which that assertion is based are sufficient to trigger a waiver of the privilege. For these reasons, this portion of plaintiffs' motion is retained under advisement and the court will conduct a telephone conference on Thursday, November 16, 2006 at 2:00 pm to permit defendant to explain (and plaintiffs to respond to that explanation) to the court the meaning of the phrase "good faith" as that phrase is used in defendant's answer and to further explain to the court the factual basis for defendant's "good faith" assertion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motions for review (docs. 3605 and 4338) are granted with respect to Exhibits A through E and Exhibit L and the court remands to the magistrate judge the issue of whether defendant waived the attorney-client privilege with respect to these Exhibits by not asserting that privilege in its privilege log and, if he concludes that defendant did waive the privilege, to consider the merits of defendant's claim that the documents are protected from discovery by the work product doctrine. The motions are retained under advisement with respect to plaintiffs' assertion that defendant waived the attorney-client privilege by as-

---

**12.** Although the Circuit in *Frontier* was predicting Wyoming law in a diversity case, the Circuit, concluding that the Wyoming Supreme Court had not directly announced a definitive test for waiver of attorney-client privilege, expressly looked to "other state-court decisions, well-rea-

soned decisions from other jurisdictions, and any other available authority to determine the applicable state law." 136 F.3d at 700. Thus, there is no reason to believe that the Circuit would reach a contrary result under federal law.

serting its "good faith" compliance with the ADEA. The motions are otherwise denied.

**IT IS FURTHER ORDERED THAT** the court will conduct a telephone conference on Thursday, November 16, 2006 at 2:00 pm to hear additional argument concerning whether defendant has waived the attorney-client privilege by asserting its "good faith" compliance with the ADEA.

**IT IS SO ORDERED.**